IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **CHARLES E. FORD III,** | ) | CASE NO. 7:17CV00457 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| **SUPERINTENDENT MRRJ, <u>ET</u> <u>AL.</u>,** | ) | By: Glen E. Conrad |
| | ) | Senior United States District Judge |
| Defendant(s). | ) | |

Plaintiff Charles E. Ford III, a Virginia inmate proceeding <u>pro</u> <u>se</u>, has filed this civil rights action, pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. In his complaint, Ford alleges that he has been denied due process on a prison disciplinary charge and has been improperly assigned to segregated confinement, where he has been unfairly treated. Upon review of Ford's complaint and attached documents, the court concludes that the complaint fails to state any claim upon which relief can be granted.

## I.

Ford is incarcerated at the Middle River Regional Jail ("MRRJ"). On June 26, 2017, an officer reported that during a strip search, he found a weapon in Ford's shoe and brought a disciplinary charge against the inmate. Ford received notice of the charge the next day and participated in a disciplinary hearing on July 7, 2017. Ford contended that another inmate had had opportunity and motive to plant the weapon in his shoe. Based on the reporting officer's version of events, however, the hearing officer found Ford guilty of the charge and penalized him with thirty days of segregated confinement. The charge was upheld on appeal. <u>See</u> gen. Compl. 2, ECF No. 1; <u>Id.</u> Attach. 1, 10, and 11, ECF No. 1-1.

After Ford served his term of disciplinary segregation, he was placed on administrative maximum segregation. In "max seg," he remains in his cell 23 hours per day, and his radio was

confiscated. He has no access to television or a microwave, although he believes policy allows these privileges to segregation inmates. Ford also claims that other inmates in the same "pod" are allowed to have their radios, and the poor ventilation in the area could allow the spread of other inmates' contagious medical conditions, such as scabies. In response to Ford's grievances on these matters, officials have informed him that he is receiving the privileges approved for max seg inmates and the area is adequately cleaned to prevent the spread of disease.

In late September 2017, Ford filed this civil action under § 1983 against "Superintendent MRRJ and staff and administration." Compl. 1, ECF No. 1. He seeks monetary damages and expungement of the disciplinary charge.

## II.

The court is required to dismiss any action or claim filed by a prisoner against a governmental entity if it determines the action or claim is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b)(1). To state a claim, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988).

As an initial matter, Ford cannot pursue a § 1983 claim against the MRRJ staff or administration as a group, because such a group does not qualify as a "person" subject to suit under § 1983. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Therefore,

2

Ford's claims against the staff and administration must be summarily dismissed under § 1915A(b)(1).

Second, although the MRRJ superintendent is a person for purposes of a § 1983 claim, Ford does not allege that this individual took any personal action that violated his constitutional rights. Apparently, he seeks to impose liability on this defendant merely based on his supervisory role at the jail. Such a claim is not actionable under § 1983, however. "[L]iability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights [because t]he doctrine of respondeat superior has no application" under § 1983. Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (internal citations omitted). As such, the court must summarily dismiss Ford's claims against the superintendent. Furthermore, the court finds no basis to allow Ford to amend his allegations against the superintendent or any other jail official, because his allegations do not reflect any violations of constitutionally protected rights.

The court construes Ford's challenge to his disciplinary proceedings as a claim that he was deprived of a liberty interest without due process. An inmate's liberty interest invokes constitutional protection, however, only when the possible penalties would "impose[ ] atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991).

Accordingly, Ford's penalty of thirty days in segregation, with the consequent loss of privileges, cannot qualify as atypical so as to give rise to such a constitutionally protected liberty

interest. As such, he had no constitutional right to particular procedural protections before imposition of the segregation penalty. In any event, his submissions indicate that he received advance written notice of the charge and had a hearing during which he could present his evidence; he simply disagrees with the outcome of that hearing. Such circumstances alone do not give rise to a constitutional claim. See Wolff v. McDonnell, 418 U.S. 539, 557 (1974) (regarding federal procedural protections); Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454 (1985) (holding that prison disciplinary proceedings comport with due process if "the findings of the prison disciplinary board are supported by some evidence in the record").

In addition, Ford has stated no basis for a claim of unconstitutional living conditions. Certainly, he has no constitutional right to possess a radio in jail, or to have access to particular appliances. The Eighth Amendment prohibition against cruel and unusual punishment "protects inmates from inhumane treatment and conditions while imprisoned." [1] Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Otherwise, "[t]o the extent that [prison living] conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). To prove a constitutional claim related to an unsafe jail condition, Ford must show that the defendant prison official acted with deliberate indifference: that he knew, subjectively, that the condition presented a substantial risk of serious harm and nevertheless failed to take "reasonable

---

[1] Ford's submissions do not indicate whether he was a pretrial detainee or a convicted defendant during the events at issue here. Claims concerning confinement conditions imposed upon pretrial detainees are to be evaluated under the Due Process Clause, rather than under the Eighth Amendment. Bell v. Wolfish, 441 U.S. 520, 535-538 (1979). Due process proscribes punishment of a detainee before proper adjudication of guilt has been accomplished. Id. However, "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Id. at 539. As a practical matter, the contours of the Due Process Clause in the prison conditions context have been considered as coextensive with the substantive constitutional principles applied via the Eighth Amendment to convicted inmates. See, e.g., Hill v. Nicodemus, 979 F.2d 987, 991-92 (4th Cir. 1992) (regarding detainee's medical needs). In any event, in this case, Ford has not stated facts suggesting that jail officials' actions or policies of which he complains were not reasonably related to legitimate jail security concerns, thus precluding any finding of unconstitutional punishment in violation of due process.

4

measures" to alleviate it. Farmer v. Brennan, 511 U.S. 825, 834, 847 (1994). Ford must also demonstrate that the challenged conditions caused, or is likely to cause, him serious injury. Strickler v. Waters, 989 F.2d 1375, 1380-1381 (4th Cir. 1993). Ford has made no such showing regarding the challenged conditions at MRRJ. Ford's complaints that prison officials violated their own policies do not present constitutional claims actionable under § 1983. Riccio v. County of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990).

Finally, Ford's claim of being treated differently than other inmates in the same pod fails to implicate equal protection principles. The Equal Protection Clause "does not take from the States all power of classification, but keeps governmental decision makers from treating differently persons who are in all relevant respects alike." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (citation and internal quotation marks omitted). Ford states no facts showing that he was similarly situated in all relevant respects to the inmate or inmates who were allowed to possess a radio or have access to television and a microwave.

III.

For the reasons stated, the court will summarily dismiss Ford's complaint without prejudice for failure to state a claim.[2] An appropriate order will enter this day. The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 11th day of December, 2017.

           /s/ Glen E. Conrad
           Senior United States District Judge

---

[2] Ford is advised that dismissal of this case without prejudice leaves him free to refile his claims in a new and separate civil action, should he believe he can present facts that state actionable constitutional claims.